# OCTOBER TERM 1881.

JOHN DOWNEY v. GEORGE HENDRIE.

*Street cars—Contributory negligence—Accident to passenger.*

It is contributory negligence for a passenger of ordinary common sense to sit on the driving-bar of a street car even at the driver's invitation if there is room for him inside the car.

Courts must take judicial notice of what everybody knows with regard to the incidents of railway travel.

In an action for an injury caused by falling off the front rail of a street car, and being run over, the defendant's testimony, which was not contradicted, showed that the driver made every effort to rescue the plaintiff as he fell, and stopped his car as soon as he could. *Held* that so far as running over him was concerned there was no question of negligence, on defendant's part, to go to the jury.

Error to Superior Court of Detroit. Submitted June 23. Decided October 5.

CASE. Plaintiff brings error. Affirmed.

*Don. M. Dickinson* (*Griffin, Dickinson, Thurber & Hosmer*) for plaintiff in error. A passenger is not guilty of contributory negligence in taking a position to which he has been invited by the conductor: *Burns v. Bellefontaine Co.* 50 Mo. 139; *Clark v. Eighth Ave. R. R. Co.* 36 N. Y. 135; nor if the position is occupied by consent of the conductor, or with his knowledge without objection: *O'Donnell v. Allegheny Co.* 59 Penn. St. 239; *Dunn v. Grand Trunk R. Co.* 58 Me. 187 : 10 Am. Law Reg. (N. S.) 615; *Carroll v. N. Y. etc. R. R.* 1 Duer 571; *Jacobus v. St. Paul R. R. Co.* 20 Minn. 125; *Washburn v. R. R. Co.* 3 Head (Tenn.) 638; *Phila. v. Derby* 14 Howard 468; a man is bound to take reasonable care of himself; but whether he does this or not, it does not relieve anybody else from the duty of also taking

reasonable care: *Radley v. London etc. R. R.* L. R. 10 Exch. 100; *Davies v. Mann* 10 M. & W. 546; the doctrine of contributory negligence and its qualification is well stated by Lord Penzance in *Radley v. London etc. R. R.* (1876) L. R. 1 App. Cas. 759; though plaintiff's negligence may have contributed to the accident, yet if defendant could, by the exercise of ordinary care, have avoided the mischief which happened, plaintiff's negligence will not excuse him: *McCune v. B. C. R. & N Ry. Co.* 52 Ia. 600; *Morris v. C. B. & Q. R. Co.* 45 Iowa 29; Cooley on Torts 674 and cases.

*Brennan & Donnelly* for defendant in error. A street railway passenger must keep himself within the limits provided for his accommodation, and if he places himself in a dangerous position he must do so at his own risk: *Todd v. Old Colony R. Co.* 3 Allen 18: 7 Allen 208; *Hickey v. Bost. & Lowell R. R.* 14 Allen 429; *Pittsburg R. R. v. McClurg* 56 Penn. St. 294; *Indianapolis R. R. v. Rutherford* 29 Ind. 82; *Spooner v. Brooklyn City R. R.* 31 Barb. 419; *Tregear v. Dry Dock Railway* 14 Abb. Prac. (N. S.) 49.

GRAVES, J. The plaintiff having taken passage on a street car of the defendant fell from the car and the wheels crushed his elbow. He was between forty and fifty years old, a butcher and dealer in fat cattle, had lived many years in Detroit, was familiar with street cars and with that which injured him. He brought this action to recover for the injury and when the evidence was closed, the learned judge being of opinion that it was too obvious to be questioned that the plaintiff's own negligence was the material if not the exclusive cause of his being hurt directed a verdict for defendant. It is now urged that in view of the state of the evidence the plaintiff was entitled to have the sense of the jury on it.

The facts of negligence alleged as the cause of injury are claimed to present two separate grounds of recovery; and viewing the declaration under this theory, and as favorably as possible for the plaintiff, they may be stated substantially

as—*first*, assigning the plaintiff to a seat from which there was danger he would be thrown and injured in case of a sudden jerk of the car and then causing such jerk by starting up the horse by a blow of the driver's whip; and *second*, negligently running over the plaintiff after he had been thrown from the car to the track.

Whatever color is found in the case for the claim made by the plaintiff's counsel for a submission to the jury on the ground first mentioned, is confined to the plaintiff's own testimony. He entered the car at the rear end, passed right through to the front platform where the driver stood, and sat down, with his back out, on the driving-bar, a thin iron rail not exceeding an inch in thickness. The car was moving at a moderate pace, and when it had gone a short distance only, the plaintiff fell off backward and the wheels passed over his arm.

There was no conductor except the driver and fare was paid at a box placed at the front door. Both doors were standing open, and the plaintiff, as he testified, went forward to pay his fare, at which the driver called him out and invited him to be seated on the bar and he seated himself accordingly. That there was abundance of unoccupied seating room inside the car and that he was not hindered by any one from sitting there. That the car had moved about one block when the driver struck the horse and "tipped" plaintiff over. That the blow caused the car to "jump him right off." There is no evidence that the driving of the car was not according to the usual and proper mode.

This part of the case is not much pressed; but the point is understood as being, that granting the driving bar to have been, as the plaintiff knew, a dangerous seat, and also admitting that the fact of his occupying it was a proximate contributory cause of his injury; yet as his sitting there was on the driver's invitation it ought not to be reckoned as contributory negligence. There is no doubt that it has been laid down as a rule that an assignment of the passenger by the carrier to a position of danger may in case of injury estop the carrier from setting up the occupation of that

position as contributory negligence.    But the rule is plainly not one of universal application.

Regard must be had to the passenger's capacity to look out for himself ; to the opportunity there may be to get a safer position ; to the distinctness, certainty and extent or degree of the peril, and so on.

Take the case of a child, and the case of a man every way qualified to take care of himself; the case where the position given seems tolerably safe and no better one is perceived ; and the case where it is manifestly one full of danger and a safe one is known which is equally accessible.    It would be very unreasonable to apply the rule equally to all.    May the ordinary passenger, with his eyes open and with abundant accommodations before him which are safe, accept an invitation from the carrier to ride on the cow-catcher, and then, if injury arise from it, be allowed to set up the invitation as a legal answer to the charge of contributory negligence ? To conclude that he might would be to permit a person of full capacity to exempt himself from the duty and responsibility appertaining to him as a moral being and in substance to stultify himself in order to cast a liability on another.

" Judges cannot denude themselves of the knowledge of the incidents of railway traveling which is common to us all."    *Siner v. Great W. Ry. Co.* L. R. 4 Ex. 123 ; *Dublin, Wicklow & Wexford Ry. Co. v. Slattery* 3 App. Cas. 1155 : 24 Eng. 713 ; *Lake S. & M. S. R. R. Co. v. Miller* 25 Mich. 274.    And in the example put the negligence would be so obvious and its commission so palpably and certainly inexcusable that a court would not be justified in treating the question of the passenger's responsibility as an open one. A direct charge would be called for.

Other cases may be supposed where from the nature of the circumstances a blind acceptance of the carrier's suggestion, however hazardous, would not so clearly reveal the passenger's disregard of that primary duty which rests on every one to exert his own will and judgment to guard against needless perils, as to justify the judge in taking the matter from the jury.    No doubt the riding on a cow-catcher,

would, to ordinary apprehension if not in fact, be an exposure to consequences more serious than any at all probable to arise from riding on the driver's bar of a street car in the way in which the plaintiff rode on this occasion ; but the unfitness of the situation and the fact that it involves great risk of some injury more or less severe and is therefore one of extreme danger, is just as conspicuous in the one case as in the other.

Indeed the proposition is a plain one that different exposures to material bodily injury may be equally great, whilst the severity of the injuries threatened by the exposures may be entirely different.

Was there any proper case to be submitted on the second ground ? The position taken here is that supposing the plaintiff's fall to have arisen from his own carelessness, yet that the defendant was then bound to use ordinary care to avoid hurting him, and that there was evidence before the jury tending to show that he did not. The argument for this view concedes that the evidence given for the plaintiff affords no basis for it, and that the record contains nothing to countenance it except the testimony of Mr. Whiting, a witness for the defendant. The various witnesses had different opportunities for seeing what took place, some noticing one incident and some another, and each has explained in his own style how matters looked to him, in his position and under his state of mind and attention. But as to the point under consideration the testimony of no one derogated from the current tendency.

We shall not pause to examine the right of a trial judge to step aside from the plaintiff's evidence and take up and put to the jury as an account on which a finding for the plaintiff would be regular the statements of a witness on the other side who assumes to give only a part of the transaction and shows that he was not in a situation to see the rest and did not see it and whose testimony as far as it goes is reconcilable with the other evidence for the defence. The inquiry is unnecessary because the case may be well disposed of on the theory of plaintiff's counsel.

What were the circumstances so far as indicated by Mr. Whiting? He sat on the front seat next to the platform and with his back towards it and on the same side from which the plaintiff fell. He was engaged in conversation with Mr. Dyer. His position enabled him by a "side glance" to look out the window. The plaintiff fell backward from the rail and a noise occurred and the witness made a "side glance" and looking through the window saw the plaintiff clinging with both hands to the "dash-board." He was dragging on the ground nearly under the car and was so dragged about ten feet. The witness did not look towards the platform and did not see the attempt by the driver, as explained by other witnesses, to extricate or save the plaintiff. What he saw was by looking through the window and he did not see the driver. He says the car was going quite slow and when he discovered the plaintiff clinging to the "dash-board" the brake was on and the car under check and he thought the car was stopped as quick as possible. When we consider that the plaintiff was a heavy man, that he fell off backwards, that the driver had his horse and the brake to attend to, and actually caught hold of the plaintiff and tried to rescue him, and that the space of time between the fall and the injury could not have exceeded five seconds, it is impossible to say that there were any facts on which the jury could find that the defendant, after the plaintiff's fall, omitted to do anything which a street railway company of ordinary care would have done in the like circumstances.

I think the judge committed no error in ordering a verdict for the defendant, and that the judgment should be affirmed with costs.

The other Justices concurred.