JOHN BRAUN v. NORTHERN PACIFIC RAILWAY COMPANY.

May 9, 1900.

Nos. 12,027—(61).

/ Passengers on Railway—Parent and Child—Payment.

The law implies a contract on the part of a parent who enters a railroad train with a child non sui juris, and subject to payment of fare, to pay the fare of such child.

Same—Removal for Nonpayment.

If he refuse to pay such fare, both may be expelled and removed from the train, even though the parent tenders payment of his own fare.

Removal of Child—Removal of Parent.

The forcible ejection and removal of a child of tender years from a railroad train on which it has taken passage with its parent, for the failure of the parent to pay the child's fare, is, whether rightful or wrongful, in effect the ejection and removal of the parent. If, in such case, the parent has paid his own fare before the removal of the child, such fare, or the unearned value thereof, must be returned, or offered to be returned, as a condition precedent to the right of removal.

Action in the district court for Ramsey county to recover $2,000 damages for the ejection of plaintiff and his infant son from defendant's train. The case was tried before Kelly, J., and a jury, which rendered a verdict in favor of plaintiff for $200. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*C. W. Bunn* and *L. T. Chamberlain,* for appellant.

If defendant contracted to carry plaintiff's son, the expulsion of the boy was wrongful. If no contract was made, inasmuch as fare was neither paid, tendered, nor intended to be paid, defendant had a right to eject the boy, as it did, without physical injury either at a station or elsewhere. Wyman v. Northern Pac. R. Co., 34 Minn. 210.

The ticket seller at Cleveland did not have authority, either express or implied, to contract for carriage of plaintiff's son free of charge over defendant's road. A principal is only bound by acts of a special agent strictly within his authority, and a third party is bound at his peril to ascertain the limit of that authority. 1 Am. & Eng. Enc. 351. There was no general agency. If the preceding conductors, knowing the boy's age, carried him free, it is immaterial. Defendant is not bound thereby, nor even if preceding conductors on defendant's own road had done so. Cox v. Los Angeles, 109 Cal. 100; Poulin v. Canadian Pac. Ry. Co., 6 U. S. App. 298; Dietrich v. Pennsylvania, 71 Pa. St. 432. See Weikle v. Minneapolis, St. P. & S. Ste. M. Ry. Co., 64 Minn. 296; Nat. Bank of Commerce v. Chicago, B. & N. R. Co., 44 Minn. 224; 24 St. (U. S.) 379 (c. 104) § 2; 25 Id. 855 (c. 382).

The alleged contract is either without consideration or invalid as an attempted variation by parol of a contemporaneous written contract. The tickets were contracts for the carriage of one person each. Dunlap v. Northern Pac. R. Co., 35 Minn. 203; Poulin v. Canadian Pac. Ry. Co., supra; Hill v. Syracuse, 63 N. Y. 101, 103; 1 Fetter, Car. § 276. The only damages, even if authority on part of the ticket seller to contract to carry the child existed, would be the value of the fare and the reasonable value of time lost. See Poulin v. Canadian Pac. Ry. Co., supra; Bradshaw v. South Boston, 135 Mass. 407; McKay v. Ohio, 34 W. Va. 65; Frederick v. Marquette, 37 Mich. 342; Yorton v. Milwaukee, 54 Wis. 234; Townsend v. New York, 56 N. Y. 295; Peabody v. Oregon, 21 Ore. 121. The damages were excessive. Kleven v. Great Northern Ry. Co., 70 Minn. 79, 82.

*Moritz Heim* and *Stevens, O'Brien, Cole & Albrecht,* for respondent.

There was in effect an expulsion of plaintiff, and, conceding for the sake of argument that defendant had the right to expel him, it only had the right to do so by restoring his ticket or its unearned value. Wardwell v. Chicago, M. & St. P. Ry. Co., 46 Minn. 514; Lake Shore v. Orndorff, 55 Oh. St. 589, 38 L. R. A. 140, note. It would be unreasonable to say that under such circumstances the parent left the car voluntarily. Gibson v. East Tenn., V. & G. R.

Co., 30 Fed. 904. Defendant would clearly not be justified in taking a child eight years old from its parents and throwing him off at a side track, whether he had paid fare or not. Louisville & N. R. Co. v. Johnson, 108 Ala. 62; Louisville v. Sullivan, 81 Ky. 624; Johnson v. Chicago, 58 Iowa, 348. Plaintiff's duty was to protect his child under the circumstances, and he had the right to treat its ejectment as his ejectment, without any formal order from defendant as to himself.

The authority to make contracts for carriage of passengers involves power to make all ordinary collateral arrangements connected with such contracts, and prima facie the principal is bound by these arrangements. Watts v. Howard, 70 Minn. 122; Young v. Pennsylvania, 115 Pa. St. 112; Van Buskirk v. Roberts, 31 N. Y. 661; Burnham v. Grand Trunk, 63 Me. 298; Hutchinson, Car. §§ 262, 580 I. The contract was entire to carry the grown persons and the child for a gross sum. It makes no difference whether that gross sum was arrived at by computing a certain fare for grown persons or not; the consideration for the contract was the money paid by plaintiff on the representation of the company that the party might be transported for that price. A railroad ticket is ordinarily not regarded as a complete contract, but is rather in the nature of a receipt or token, and in any case is only binding as a contract so far as the terms are clearly expressed thereby; and the oral evidence as to the real terms of the entire contract may be received in so far as it does not contradict clearly expressed conditions of the ticket itself. Hutchinson, Car. § 580; Peterson v. Chicago, 80 Iowa, 92. A contract of transportation entirely independent of the ticket may be shown. Van Buskirk v. Roberts, supra; Grimes v. Minneapolis, L. & M. Ry. Co., 37 Minn. 66. Compensatory damages include the elements of mental suffering, humiliation, and degradation, as well as the amount of fare and loss of time and inconvenience. 2 Fetter, Car. § 538. The damages were not excessive. Finch v. Northern Pac. R. Co., 47 Minn. 36.

BROWN, J.

This action is one to recover damages for the alleged wrongful expulsion of plaintiff and his infant son from one of defendant's

passenger trains on August 7, 1898.   The facts are as follows: On August 5, 1898, plaintiff applied to a railroad ticket agent at Cleveland, Ohio, for through railroad tickets from that city to Hebron, in the state of North Dakota, for himself, wife, four children, and two adult persons, not members of his family.   What occurred between him and the ticket agent is best disclosed by the evidence, as follows:

"Q. Well, did you have any talk with this man before you bought the tickets?   A. Yes.   Q. Now tell us, slowly, what that talk was, so all these gentlemen will understand you.   A. I come to the office, and ask what it cost,—a ticket to North Dakota, Hebron; one ticket.   He tell me it cost $29,—one ticket.   Q. He told you $29, the price of the ticket?   A. Yes; one ticket.   And he says when I buy more tickets I get cheaper.   And I tell him I got four small children, and I and my wife and two girls, and he says—   Q. He says what?   A. He says, 'I give you four tickets for the whole family, for the whole eight persons, and you pay me for every ticket $27.25.'   And I say, 'All right,' and I give him $109, and put my name, and he gave me four tickets.   Q. Was anything said between you about the ages of the children?   A. No, nothing.   I ask him before I buy the tickets, 'I got four small children.'   He ask me how old the oldest one.   I told him eight years.   He says: 'All right.   He pay nothing.' "

The tickets were delivered to plaintiff, and he at once started on his journey with the members of his party, reaching St. Paul on the morning of August 7.   The agent of whom such tickets were so purchased was an agent of the Nickel Plate railroad, but was authorized to sell through tickets over connecting lines between Cleveland, by way of and over defendant's line, to said Hebron. As stated, plaintiff's party consisted of four adult persons and four children.   Among the children was a boy of the age of eight years. Plaintiff obtained no separate ticket for the boy, and had no written evidence that he was entitled to passage with the other members of the party, but plaintiff claims that his right of passage was covered and secured by the contract with the Cleveland agent under which the tickets were purchased.   Counsel for defendant do not question the authority of this agent to sell the tickets to plaintiff, nor the validity of the tickets.   But they do question and contest the validity of the alleged contract for the passage of the

boy without payment of fare. They insist that the authority of the Cleveland agent was limited to selling tickets, and that he had no authority or power to contract for the transportation of children without tickets, nor to agree for the defendant company that children over five years of age should be carried free. Defendant's passenger rates and instructions to agents were offered and received in evidence, from which it appears, among other things, that children under twelve and over five years are required to pay half-fare rates for tickets or transportation.

Whether the Cleveland agent had authority to make a contract, binding on defendant, for the transportation of plaintiff's boy free, —for such is the result of the transaction shown by plaintiff's testimony,—is a question clothed in much doubt, and is difficult of solution. We are not agreed on the subject. And as another feature of the case, presented by the pleadings and evidence, renders a decision of the question unnecessary, we pass it without discussion. The evidence tending to prove such contract may be referred to upon the question whether plaintiff entered defendant's train with his boy, and insisted upon his passage without a ticket other than the one he himself possessed, in good faith, and without wrongful intent to defraud the company; and it was proper for the consideration of the jury on the question of damages. While we differ on the question of the authority of the Cleveland agent to enter into the alleged contract for the free transportation of the boy, we are agreed that plaintiff's recovery should be sustained on the rule laid down in the case of Wardwell v. Chicago, M. & St. P. Ry. Co., 46 Minn. 514, 49 N. W. 206.

Plaintiff and his party entered one of defendant's trains on the morning of August 7, 1898, at St. Paul, to continue their journey to Hebron. Before arriving at Minneapolis, the conductor or ticket collector in charge of the train took up their tickets, and returned in place thereof conductor's checks or tickets, the precise nature of which is not shown by the evidence; but we may assume, basing such assumption upon a common knowledge of the custom of railroad companies in such matters, that the tickets or checks returned to plaintiff were the ordinary checks given by conductors, and entitled the plaintiff to passage on that day and train only. On dis-

covering that plaintiff's eight year old son had no ticket, the conductor demanded that his fare be paid, or that he leave the train. Plaintiff refused to pay the fare, claiming that he was entitled to free passage under the contract with the Cleveland agent. The conductor refused to recognize such contract, and ejected the boy from the train as it was leaving the station at Minneapolis, but did not return his ticket to plaintiff, or offer to return it. The train was in motion at the time, but the boy was in no way injured. Upon the expulsion of his son, plaintiff left the train, and remained with him. Before doing so, he handed to his wife the conductor's checks or tickets given him in lieu of his tickets, and she continued on her journey with the other members of the party. Plaintiff and his son resumed their journey some four days later.

It is conceded that plaintiff had a ticket entitling him to passage on defendant's train to Hebron, and it may be conceded that his son, who was of fare-paying age, had no ticket and no right to a free passage; and we have for consideration the question whether the expulsion of the son from the train for the failure of the father to pay his fare, without first having returned, or offered to return, the latter's ticket, was a violation of the contract to carry the father to his destination, or such a wrong as to render it liable in damages. The father having entered the train with his son, who, as we have noted, was but eight years old, and having refused to pay his fare when demanded, the defendant had the lawful right to eject them both from the train. Beckwith v. Cheshire, 143 Mass. 68, 8 N. E. 875; Lake Shore v. Orndorff, 55 Oh. St. 589, 38 L. R. A. 140, and cases cited in the note. This is on the theory that, as the parent is in charge of the child who is non sui juris, the law implies a contract on his part to pay the child's fare, and, on his refusal to do so, both may be expelled from the train. Philadelphia v. Hoeflich, 62 Md. 300. There is no claim that plaintiff was personally expelled or removed from the train, or that he was requested or ordered to get off. The contention on his part in this respect is that the forcible removal of his son was, under the circumstances, a justification for his leaving the train, and, in effect, his removal as well as the removal of the son.

Counsel for defendant conceded on the argument that, if the

removal of the son was wrongful, it would operate as the removal of the father, but contended that, if the removal of the son was rightful, then such removal would not operate as the removal of the father. We cannot concur in this latter contention. The reason for the rule that the expulsion of the child operates as an expulsion of the parent is the same, whether applied to a case where the child may be lawfully and rightfully removed, or to a case where such removal is wrongful. The reason for the rule is found in the laws of humanity and nature. It is the parent's duty to care for and protect his child. There is an inseparable bond of unity between them. And to hold that where the child is forcibly removed and ejected from a railroad train in a strange city, among strangers, whether rightfully or wrongfully, the act of the parent in following the child is purely voluntary on his part, and that such removal of the child is not in effect the removal of the parent, would do violence to the sacred relations existing between parent and child, and the laws of humanity and nature. In such case the departure of the parent from the train is not voluntary in the sense that it is of his own choosing or of his own free will. On the contrary, the act of the railroad company in removing the child is the inducement, the cause, and it would be unreasonable to say that under such circumstances the parent left the train of his own free will. So we conclude that the ejection of a child of tender years from a railroad train for the failure of the parent in charge of and accompanying the child to pay its fare, whether rightful or wrongful, is in effect the ejection and removal of such parent. Gibson v. East Tenn., V. & G. R. Co., 30 Fed. 904.

It remains to be considered whether the failure of defendant to return to plaintiff his ticket, or its unearned value, renders it liable to him in this action. The complaint is broad enough to sustain such recovery, and we believe the question is ruled by the case of Wardwell v. Chicago, M. & St. P. Ry. Co., supra. It is there held that such failure to return the fare actually paid by the passenger renders the company liable. We quote from the opinion in that case, at page 517:

"As precedent to the right to expel him from the train, he [the

conductor] should have returned to plaintiff what he was entitled to of the money, and until he did that he had no right to put him off. It is true he returned it to him immediately after the expulsion. But the wrong had then already been committed, and could not be repaired by doing what ought to have been done before the expulsion."

It was not the duty of plaintiff to demand the return of his ticket before leaving the train, but, on the contrary, it was the duty of the conductor of the train to return it, or its equivalent, as a condition precedent to his right to eject him. Bland v. Southern, 55 Cal. 570. Nor is it important or material to the right of action that a ticket was subsequently furnished him, with which he continued his journey. Wardwell v. Chicago, M. & St. P. Ry. Co., supra. It is not disputed but that defendant's conductor or collector took up plaintiff's ticket, returning to him a conductor's check; and it is not claimed that the original ticket was returned, or offered to be returned, before the boy was ejected. If, as suggested by a member of the court, the original ticket had been cancelled by the conductor, and thereby rendered worthless and of no value as an evidence of plaintiff's right of passage on a subsequent train, then it was the duty of defendant to return in lieu thereof its unearned value, or some evidence or token which would answer every purpose of the ticket uncancelled.

We are unable to distinguish this case, on principle, from the Wardwell case, and feel constrained to follow and apply the law there laid down. A verdict of $200 was sustained in that case, and no reason occurs to us why the same amount should not be sustained in this case. We have examined all the assignments of error, and find none of sufficient consequence to warrant a new trial. The charge of the court that the jury might take into consideration the plaintiff's pecuniary condition, in reduction of damages, —for such is the effect of the charge,—was in defendant's favor, and furnishes no ground for complaint. The fact that the instruction on this subject was favorable to defendant was recognized by its counsel, as shown by the exception taken thereto, and no exception was taken because it was adverse to defendant's rights or interests.

The order appealed from is affirmed.

A motion for a rehearing having been made the following opinion was filed May 22, 1900:

BROWN, J.

In view of the vigor and earnestness shown in appellant's application for a reargument of this cause, we deem it not out of place to add just a word in denying it. The original opinion was prepared after such consultation and examination as the press of business before the court would warrant, and the statement there made concerning the custom of conductors in taking up tickets from passengers, and returning to them a substitute amounting to no more than an evidence that the passenger has paid his fare, was based on what we supposed and believed, and still suppose and believe, to be known to every person who has ever traveled on railroad trains. The authorities supporting us are numerous. Isaacson v. New York, 94 N. Y. 278; Smith v. Potter, 46 Mich. 258, 9 N. W. 273; Merchants v. Hall, 83 N. Y. 338; Gregory v. Wendell, 39 Mich. 337; Downey v. Hendrie, 46 Mich. 498, 9 N. W. 828. "Judges cannot denude themselves of the knowledge of the incidents of railway traveling which is common to us all." Siner v. Great Western, L. R. 4 Exch. 117, 123. And we may add, further, in taking final leave of the case, that the "conductor's exchange checks" appended to the application for reargument corroborate the assumption indulged in by the court. They expressly provide that they are good for one continuous passage to place of destination. And plaintiff, having begun his passage thereunder, was bound to continue it, otherwise the check would be invalid.

Application denied.